IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TAMMY FRYE                                                              PLAINTIFF

v.                           No. 3:17-cv-31-DPM

METROPOLITAN LIFE INSURANCE
COMPANY and AMERICAN
GREETINGS CORPORATION                                          DEFENDANTS

ORDER

**Background.** Tammy Frye worked for American Greetings. The company sponsored an ERISA-governed plan for its employees. AR 94. American Greetings's Benefits Advisory Committee was the plan administrator. AR 95 & 98. But the Committee delegated almost all plan administration to MetLife, who was also the claims administrator. AR 98. In late 2012, Frye enrolled her son, Brent Gyngard, as a dependent for medical coverage. AR 302–303. As required, she provided his date of birth and other information. AR 305. She also named Gyngard as a dependent beneficiary on the life and accidental-death-and-dismemberment coverage that the plan provided on her life. And she elected some optional coverage: life and AD&D

benefits for her dependents on their lives. All this was done through the www.americangreetingsbenefits.com website. AR 26. MetLife and the Committee didn't ask for any particulars about dependents for purposes of their life and AD&D coverage. AR 428-430. All of Gyngard's coverage began in 2013. American Greetings withheld Frye's premiums from her wages. AR 314-327. During the open enrollment period for the 2014 plan year, American Greetings sent Frye a Benefits Enrollment Worksheet that listed Gyngard as her sole dependent. AR 311-312. Frye took no action and the coverage rolled over into 2014. In March 2014, though, Gyngard turned twenty-three. Frye didn't alert American Greetings or MetLife. And neither of them alerted Frye that Gyngard had aged out of coverage. In late 2014, American Greetings sent Frye another Benefits Enrollment Worksheet that listed Gyngard as a dependent. Frye took no action. And Gyngard was again rolled over as her sole dependent, this time into the 2015 plan year. AR 180-181. Then, in October 2015, he died in a car crash. AR 121.

Frye filed a claim for benefits based on Gyngard's death: $10,000 (the basic amount of life insurance for dependents) and, because he died in an accident, an AD&D benefit (set at 20% of Frye's elected AD&D coverage on her own life, which was four times her annual salary). The record is unclear on exactly what this second amount would be. Acting as the plan's claims administrator, MetLife denied

Frye's claim. AR 156–158. MetLife explained that the life insurance and AD&D policy only covered dependents less than twenty-three years old. AR 156–157. Gyngard had turned twenty-three on 17 March 2014. AR 182. Therefore, MetLife said, Gyngard had been ineligible for coverage during the 2015 plan year. Through a salary credit, American Greetings refunded Frye's premiums for that year, and perhaps for April–December of 2014, though the parties scuffle about that partial year refund. AR 178. Frye appealed, arguing that she thought she had insurance; she had never been told about the age cut-off; American Greetings and MetLife knew about her son's age because of his medical coverage; and neither MetLife nor American Greetings had sent her any information about conversion. AR 154. On this point, the plan provided that the life insurance on an aged-out dependent could be converted to an individual policy if that change was elected within a fixed period and the premium was paid. AR 42–43. MetLife denied Frye's appeal, pointing to plan language that explained age restrictions for life and AD&D coverage. AR 163–164; *see also* AR 4 & 85.

In response, Frye filed this case against American Greetings and MetLife. She pleaded a short and plain statement of facts, requesting relief for alleged violations of ERISA. She cited, among other provisions, 29 U.S.C. § 1132(a), but didn't specify what subparts entitled her to relief. She pleaded generally that this ERISA case was "to recover benefits due under an employee benefit plan, to redress

breaches of fiduciary duties under ERISA, and to recover costs and attorneys' fees as provided by ERISA." № 1 at 1. She included a specific count for wrongful denial of benefits, which cited 29 U.S.C. § 1132, explained the facts, and sought the life insurance and AD&D benefits. № 1 at 3–5. Another count sought attorney's fees and costs. № 1 at 6. And her prayer for relief sought three things: (1) benefits; (2) fees/costs; and (3) other just and proper relief. *Ibid.*

American Greetings and MetLife deny liability. It's common ground that MetLife is a fiduciary because it administers claims in particular and the plan in general. 29 U.S.C. § 1002(21)(a); *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996). The American Greetings Benefits Committee shares in plan administration. To the extent the Committee's work moves beyond the ministerial to the discretionary, the Committee is a fiduciary, too. *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711, 716 n. 8 (8th Cir. 2014). The parties don't dwell on whether there's any daylight between the Committee and the named defendant, American Greetings Corporation. The Court will follow suit, and simply refer to American Greetings from here on. American Greetings and MetLife rely on the plan language, Frye's obligation to read it, and her obligation to report that her son aged out of coverage. They say it's clear that Gyngard wasn't covered and that Frye should have known he wasn't.

Everyone agrees that one side or the other is entitled to judgment as a matter of law. There are cross-motions for summary judgment. № 16 & 23. The Court held the parties' papers while they engaged in additional discovery and developed a supplemental record. № 41. That record is now in, and the parties have filed supplemental briefs. № 51, 52, 53 & 54. The Court has permitted much of this helpful supplementary work to be done under seal to protect what American Greetings and MetLife say are proprietary policies. № 50. Those materials will stay sealed.

**Benefits Claim.** American Greetings and MetLife didn't abuse their discretion in denying Frye's claim. Frye argues that MetLife's dual role created a conflict of interest. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 114–16 (2008). It did. MetLife was charged with determining eligibility, construing the terms of the plan, and evaluating claims. AR 98. MetLife must also pay any benefits owed. It insures the plan. Notwithstanding this conflict, the plan terms still control. This plan gives MetLife discretion to "determine eligibility[.]" AR 98. It also states — clearly and unambiguously — that dependents age out no later than when they turn twenty-three. AR 74 & 85. Here are the plan's words:

*Child*

The **associate's** natural child, adopted child (including a child from the date of placement with the adopting parents until the legal adoption), child of same -sex partner, or stepchild who resides with the **associate**, who is:

- Under age 19 unmarried and supported by the **associate**; or
- Under age 23* and who is:
  - a full-time student at an accredited school, college or university that is licensed in the jurisdiction where it is located;
  - unmarried;
  - supported by the **associate**; and
  - not employed on a full-time basis

Coverage for a **dependent child** may be continued past the age limit if the child is incapable of self-sustaining employment because of a mental or physical handicap as defined by applicable law.

*Up to age 26 per Louisiana state law for dental and AD&D.

AR 85.

Gyngard was twenty-four when he died. AR 182. There's no cloudiness in this plan provision. MetLife's decision that the plan didn't cover Gyngard at his death was reasonable. *Manning v. American Republic Insurance Co.*, 604 F.3d 1030, 1038 (8th Cir 2010); *Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). It was more than reasonable; it was correct. On the record, Frye's ERISA claim for benefits fails as a matter of law.

**Equitable Claims.** There are now two roads to recovery in this kind of ERISA case: one for benefits under § 1132(a)(1)(B); and the other for any "appropriate equitable relief" under § 1132(a)(3). *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011); *Silva*, 762 F.3d at 722. American

Greetings and MetLife argue that Frye is limited to her benefits claim. They say that she didn't plead anything else, so the case begins and ends with the abuse-of-discretion analysis. The Court disagrees for two reasons.

First, Frye pleaded broadly. She didn't specify which part of § 1132(a) applied; instead, she cited the whole subsection. № 1 at 1. In one of her introductory paragraphs, she also said she sought to "recover benefits due" and "to redress breaches of fiduciary duties under ERISA[.]" *Ibid.* American Greetings and MetLife are right that benefits were Frye's focus — that was the caption and substance of her Count I. But the facts pleaded also support a claim for other equitable relief, and Frye's prayer asked for it. She sought "other, further and different relief as may be just and proper." № 1 at 6. Second, the case moved beyond the pleadings. Frye asked for discovery and the Court allowed some. A supplemental record was filed. The parties thoroughly briefed the other-relief issues, both the first time around and in their supplemental briefs. There's no prejudice to American Greetings and MetLife. Any uncertainty created by the generality of Frye's pleading about her claims under applicable law was eliminated by the specificity of the parties' comprehensive briefing.

- **Fiduciary Duty**

There was a breach of fiduciary duty. American Greetings and MetLife owed Frye various duties as plan fiduciaries; their flawed

administrative procedures violated some of these duties; and those flawed procedures harmed Frye. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009). American Greetings and MetLife "both [had] fiduciary obligations to plan participants under ERISA because they [were] both administrators of the Plan." *Silva*, 762 F.3d at 716 n. 8. MetLife was driving the bus on eligibility decisions. But, through the website, American Greetings was gathering information from employees and deciding what information to share with MetLife. All this involved discretion, which brought with it fiduciary duties. *Varity*, 516 U.S. at 502–03. American Greetings and MetLife were obligated to "discharge [their] duties with respect to [the] plan solely in the interest of the participants and beneficiaries[.]" 29 U.S.C. § 1104(a)(1). American Greetings and MetLife had to act with an exclusive purpose: "providing benefits to participants and their beneficiaries[,]" while also "defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A). And they had to act with care, skill, and prudence. 29 U.S.C. § 1104(a)(1)(B). But the American Greetings/MetLife procedures had a structural administrative defect. They allowed employees like Frye to pay for coverage for dependents who either are ineligible or become ineligible.

The American Greetings plan gave MetLife the main role as claims administrator. MetLife was supposed to "determine eligibility for benefits . . . and generally to do all other things needed to administer

the contract." AR 98. MetLife decided not to confirm eligibility on the front-end. It decided not to require American Greetings, as plan administrator, to do so by pop-up window or storyboard during the enrollment process on the internet. These omissions created the potential for a premium stream where no possibility of coverage existed on the back-end. It's unclear whether Gyngard met all the eligibility criteria to start with. He clearly didn't after he aged out. But the premiums flowed nonetheless.

American Greetings and MetLife failed to administer this plan solely in the interests of participants and beneficiaries situated like Frye and Gyngard. This way of doing plan business gave MetLife "essentially risk-free windfall profits from employees who paid premiums on non-existent benefits but who never filed a claim for those benefits." *McCravy v. Metropolitan Life Insurance Co.*, 690 F.3d 176, 182–83 (4th Cir. 2012). In its path-marking application of *Amara*, the *Silva* Court recognized this very point during its discussion of remedies, citing the *McCravy* case with approval. *Silva*, 762 F.3d at 725. *McCravy* involved MetLife. And a substantially similar plan provision and administrative structure were at issue.

The American Greetings/MetLife procedures break faith with ERISA's "exclusive purpose" — providing benefits, while defraying reasonable expenses. American Greetings and MetLife say that not screening for eligibility simplifies administration and reduces

administrative costs. True enough. But their administrative choice gave too much weight to the expenses saved while overlooking how simple screening for age would be.

They could have screened Gyngard's eligibility age-wise initially (by storyboard) as well as subsequently (by cross-checking it against his date of birth). AR 429–430. American Greetings knew Gyngard's birthday because of his medical insurance. AR 181. MetLife points out that the age information was for another company that provided health insurance for the plan. MetLife never got it. Gyngard's age, however, was in American Greetings's hands. It could have been passed on to MetLife easily. It should have been. American Greetings's plan offered many good benefits to the company's employees. Administering that plan's offer of life insurance and AD&D for eligible dependents of those employees, guided by the purpose of making that coverage a reality, required more care than was taken here.

American Greetings and MetLife point out, and rightly so, that Frye bears some responsibility in these circumstances. *Castello v. Gamache*, 593 F.2d 358, 360–61 (8th Cir. 1979). She does. She should have paid more attention to the plan's term, and the summary plan description, which specified the age limit for dependents. AR 4 & 85. And the plan obligated her, and other employees, to provide information about changes in dependents' status. AR 43. But this comprehensive plan is more than seventy-five pages long; the

-10-

summary runs twenty-five pages. Life is busy, and it's human nature to overlook details like this age ceiling. American Greetings and MetLife would have no way of knowing about a divorce, for example, which also disqualifies a former spouse from dependent coverage. Putting sole responsibility on the employee in that circumstance would be neither imprudent nor unreasonable. The age of a dependent is different, though. Children grow older. American Greetings and MetLife had Gyngard's age in hand, or at least handy. They, not Frye, are the fiduciaries on the scene. Frye's neglect of her contractual duty to notify doesn't relieve American Greetings and MetLife of their statutory duty to act solely in her and Gyngard's interests for the exclusive purpose of providing plan benefits less reasonable expenses.

The applicable American Greetings/MetLife procedures are a flawed structure, which do not fulfill the defendants' fiduciary duties in the circumstances. Those procedures worked to Frye's harm. *Amara*, 563 U.S. at 442–45. She is therefore entitled to "make-whole relief under § 1132(a)(3)" in the form of a surcharge against American Greetings and MetLife. *Silva*, 762 F.3d at 722–25.

- **Waiver and Estoppel**

The parties have briefed these related issues in detail. They're entitled to a ruling to complete the record.

American Greetings and MetLife didn't waive their right to assert the plan's age limit for dependent life insurance and AD&D on Frye's

-11-

benefit claim. They didn't voluntarily and intentionally let go of this right. *Farley v. Benefit Life Trust Insurance Co.*, 979 F.2d 653, 659 (8th Cir. 1992). The record shows just the opposite: in their procedures, they chose not to screen for age at enrollment, while requiring scrutiny about age at the claim stage. American Greetings and MetLife chose when and how to administer the plan's limitation. They didn't abandon it. They simply had flawed administrative procedures.

Nor are American Greetings and MetLife estopped to enforce the age limit against Frye's benefit claim. Estoppel requires material misrepresentation and detrimental reliance. *Lincoln General Hospital v. Blue Cross/Blue Shield of Nebraska*, 963 F.2d 1136, 1141 (8th Cir. 1992). Frye makes strong points that Gyngard's continued appearance on the annual enrollment forms, and the continued collection of premiums, led her to believe he was covered. Plus she never got a conversion form, offering the opportunity to switch to an individual policy after an age out. AR 43 & 154. Assuming all that suffices on the misrepresentation element, the estoppel claim fails for want of detrimental reliance. There is nothing of record showing that Frye would have bought replacement insurance of some kind if she had known the coverage through MetLife had ended. When she complained to the Arkansas Insurance Department about the claim denial, for example, Frye did not say she or Gyngard would have converted to an individual MetLife policy had they been notified. AR 154. The question is close. At this stage of the

-12-

case, though, when all of the proof must be in, detrimental reliance sufficient to justify benefits must be established by more than payment of premiums and a belief that there was coverage.

* * *

Frye's motion for summary judgment, № 16, is partly granted (on breach of fiduciary duty) and partly denied (on benefits, waiver, and estoppel). The motion for summary judgment by American Greetings and MetLife, № 23, is partly granted (on benefits, waiver, and estoppel) and partly denied (on breach of fiduciary duty). In due course, as other equitable relief allowed by the statute, the Court will enter judgment for Frye as a surcharge against American Greetings and MetLife for the amount Frye would have received had the plan's coverage been in place when Gyngard died in the accident. Frye is also entitled to a reasonable attorney's fee, costs, and interest as allowed by law. The Court would appreciate a stipulation or a motion (or both, if there's a partial agreement) concerning all these amounts by 27 April 2018.

So Ordered.

*/s/ D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

30 March 2018